UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NYJEE L. BOYD,

                    Plaintiff,                    **DECISION AND ORDER**

        v.                         6:18-CV-06302 EAW

NURSE DANA J. COPELAND,
C.O. PICHETTE, C.O. KINNEY,
NURSE JACKIE, and SERGEANT JOHN
DOE #1,

                  Defendants.
_____

## INTRODUCTION

*Pro se* Plaintiff, Nyjee L. Boyd ("Plaintiff"), a prisoner currently confined at the

Sing Sing Correctional Facility, filed this action pursuant to 42 U.S.C. § 1983, alleging that

defendants at Attica Correctional Facility ("Attica") violated his Eighth Amendment rights

when they denied him medical treatment after spraying him with a chemical agent, placed

and kept him in a hot shower for 15-20 minutes despite his pleas to turn off the water, and

ridiculed him for yelling and stomping his feet in pain after being sprayed.  (Dkt. 1 at 10-

12, 18).  Upon screening the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A,

the Court dismissed the claims related to exposure to a hot shower, verbal ridicule and

harassment, and retaliation with leave to amend, but allowed the denial of medical care

claim to proceed to service against C.O. John Does #1, #2, #3, Sergeant John Doe #2, and

Nurse Jane Doe #1, following the identification of these defendants.  (Dkt. 4).  Plaintiff

filed an amended complaint on June 17, 2019, asserting his denial of medical treatment

claim against C.O. Kinney ("C.O. Kinney"), Nurse Jackie Berlinghoff ("Nurse Berlinghoff"), C.O. Pichette, Nurse Dana J. Copeland, and Sergeant John Doe #1.  Only C.O. Kinney and Nurse Berlinghoff (collectively "Defendants") have been served with Plaintiff's amended complaint and no other Doe defendants have been identified.

Presently before the Court is Defendants' motion for summary judgment.  (Dkt. 53).  The Court issued a scheduling order for the motion (Dkt. 55), warning Plaintiff of the consequences of not responding to the motion, but no response was filed.  For the reasons that follow, Defendants' motion is granted.

I.      **FACTUAL BACKGROUND**

The following facts are taken from Defendants' Statement of Undisputed Facts and the exhibits submitted in support of Defendants' motion for summary judgment.  This District's Local Rules of Civil Procedure require that a party moving for summary judgment file a Statement of Undisputed Facts accompanied by citations to admissible evidence or to evidence that can be presented in admissible form at trial.  See L. R. Civ. P. 56(a)(1).  The rule also requires a party opposing summary judgment to file a statement admitting or contesting the moving party's Statement of Undisputed Facts and provides that an opposing party's failure to do so may render the moving party's Statement of Undisputed Facts admitted.  L. R. Civ. P. 56(a)(2).

Here, Defendants filed the required statement (Dkt. 53-1) and Plaintiff failed to submit an opposing statement.  Because Plaintiff failed to submit an opposing statement of material facts, to the extent supported by admissible evidence, the factual statements contained in Defendant's Statement of Undisputed Facts are deemed admitted for purposes

of the motion.   See L. R. Civ. P. 56(a)(2); *see also N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) ("[D]istrict courts have the authority to institute local rules governing summary judgment submissions" although "[r]eliance on a party's statement of undisputed facts may not be warranted where those facts are unsupported by the record").

Plaintiff was an inmate at Attica in March of 2017.  (Dkt. 53-1 at ¶ 1).  Around 5:02 p.m. on March 8, 2017, Plaintiff had a fight with another inmate, Gilbert Moye, in the mess hall.  (*Id.* at ¶¶ 2, 19, 39).  Officers gave direct orders to Plaintiff and Moye to stop fighting, and when they refused, they were sprayed with chemical agents by corrections officers. (Dkt. 53-1 at ¶¶ 42-43; Dkt. 53-6 at 35, 39).

In his amended complaint and at his deposition, Plaintiff makes various claims as to the actions of C.O. Kinney and Nurse Berlinghoff (*see, e.g.*, Dkt. 11 at 6-7, 10; Dkt. 53-6 at 40-46), but the undisputed evidence establishes that Nurse Berlinghoff was not even at Attica when Plaintiff went to medical at approximately 5:00 p.m. on March 8, 2017. (Dkt. 53-1 at ¶ 20, 34).  As attested by the Head Clerk in the Personnel Department at Attica, Nurse Berlinghoff's shift ended almost two and a half hours earlier at 2:30 p.m. on that date.  (*Id.* at ¶¶ 15, 20, 27).  Nurse Berlinghoff's departure from the facility before the fight even occurred was also confirmed by the Report of Keys & Equipment, a record of when staff sign out and turn in keys used while working.  (*Id.* at ¶¶ 28, 29).

Moreover, with respect to C.O. Kinney, the undisputed evidence establishes that he did not escort Plaintiff to medical and the special housing unit on March 8, 2017.  (*Id.* at ¶ 38).  Rather, C.O. Kinney escorted Moye away from the scene and required Moye to

stand near the exit to the mess hall.  (*Id.* at ¶ 46).  Once the corridors were clear and the facility secure, C.O. Kinney and C.O. Pichette escorted Moye out of the mess hall and conducted a pat frisk.  (*Id.* at ¶¶ 47-48).  Other officers escorted Moye to the special housing unit for decontamination and examination and processing, in accordance with facility procedure.  (*Id.* at ¶ 49).  Plaintiff was escorted from the mess hall to the special housing unit by correctional officers Giboo and Kelleher.  (*Id.* at ¶ 53).  Plaintiff's escort began at 5:10 p.m. and ended at 5:16 p.m.  (*Id.* at ¶¶ 54, 63).  Following the completion of decontamination in the special housing unit, at approximately 6:00 p.m., Nurse Copeland examined Plaintiff and took use of force photographs.  (*Id.* at ¶¶ 71-72).

Defendants contend that any delay in escorting Plaintiff to the special housing unit was to ensure that security staff had an opportunity to make sure that the corridors from the mess hall were clear and that the facility was secure.  (*Id.* at ¶ 59).  The officers did not wait for a camera for the escort because chemical agents were used and they were trying to expedite the decontamination process.  (*Id.* at ¶ 61).  In addition, because Plaintiff and Moye had been involved in a fight, it was standard procedure for one to be escorted before the other to avoid any further confrontation.  (*Id.* at ¶ 64).  It is also standard procedure for inmates to decontaminate in the special housing unit, rather than medical, unless there is a significant injury.  (*Id.* at ¶ 67).

## II.   **PROCEDURAL HISTORY**

Plaintiff commenced the current action on April 16, 2018.  (Dkt. 1).  On September 6, 2018, the Court granted Plaintiff's motion to proceed *in forma pauperis* and screened

Plaintiff's complaint. (Dkt. 4). In the screening order, the Court dismissed several claims with leave to amend, but allowed the denial of medical care claim to proceed to service against C.O. John Does #1, #2, and #3, Sergeant John Doe #2, and Nurse Jane Doe #1, following the identification of these defendants. (*Id.*). On June 17, 2019, Plaintiff filed an amended complaint. (Dkt. 11). On September 17, 2019, Defendants C.O. Kinney and Nurse Berlinghoff filed their answer, (Dkt. 15), and scheduling orders were issued (Dkt. 23; Dkt. 34; Dkt. 40; Dkt. 43; Dkt. 48; Dkt. 54).

Defendants filed the instant motion for summary judgment on January 6, 2022. (Dkt. 53). Plaintiff filed a motion for extension of time to respond (Dkt. 56), which was granted by the Court (Dkt. 57), but he did not ultimately file any response to Defendants' motion.

## DISCUSSION

### I.   Legal Standards Governing Motions for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the non-moving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486

(2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Where a motion for summary judgment is unopposed, the Court accepts as true all factual allegations in the admissible materials accompanying the motion for summary judgment, see Fed. R. Civ. P. 56(e), and assesses only whether any genuine issue of material fact remains for trial on the summary judgment record as it stands." *Sanders v. Viseau*, No. 3:20CV00250(SALM), 2021 WL 6197314, at *2 (D. Conn. Dec. 30, 2021) (quotation and citation omitted).

## II.     Section 1983 and Deliberate Indifference

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against a prison official under § 1983, a plaintiff must allege personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the prison's chain of command. *See Tangreti v. Bachmann*, 983 F.3d. 609, 620 (2d Cir. 2020). Moreover, the theory of respondeat superior is not available in a § 1983 action. *Andrews v. City of Rochester*, No. 21-CV-6764-FPG, 2022 WL 2356630, at *3 (W.D.N.Y. June 30, 2022).

Plaintiff's primary claim is that he was denied adequate medical attention for the breathing issues, chest pain, and burning eyes that he experienced after he was sprayed in the mess hall, which resulted in damage to his vision. A claim of inadequate medical care rises to the level of a constitutional violation only where the facts alleged show that defendant was deliberately indifferent to a plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Ross v. Kelly*, 784 F. Supp. 35, 43-44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992). "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136-37

(2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted)).  The Second Circuit has explained:

> [medical] conditions . . . vary in severity and . . . a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case.  Thus, a prisoner with a hang-nail has no constitutional right to treatment, but if prison officials deliberately ignore an infected gash, "the failure to provide appropriate treatment might well violate the Eighth Amendment."

*Id.* (quoting *Chance*, 143 F.3d at 702); *see also Banks v. Mannoia*, 890 F. Supp. 95, 99 (N.D.N.Y. 1995) ("The serious medical need requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain").

"Where the claims concern the alleged inadequacy of treatment, as opposed to the complete denial of treatment, the seriousness inquiry is narrower.  In such cases, the focus is on the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract." *Lawrence v. Evans*, 136 F. Supp. 3d 486, 489-90 (W.D.N.Y. 2015) (internal quotation marks and citations omitted), *aff'd*, 669 F. App'x 27 (2d Cir. 2016).  Ultimately, "[t]he essential test is one of medical necessity and not one simply of desirability." *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (internal quotation marks and citation omitted).  As to the subjective prong, "the official charged with deliberate indifference must act with a sufficiently culpable state of mind.  That is, the official must know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)

(internal quotation marks and citations omitted).  An isolated failure to provide medical treatment, without more, is generally not actionable unless the surrounding circumstances suggest a degree of deliberateness, rather than inadvertence, in the failure to render meaningful treatment.  *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987); *Hinton v. Pearson*, No. 3:21-CV-863 (MPS), 2021 WL 4521994, at *7 (D. Conn. Oct. 4, 2021) ("Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983.").

Here, Plaintiff alleges breathing problems, chest pain, and burning in his eyes following the spraying with a chemical agent and contends that the delay in being escorted for decontamination violated his constitutional rights.  A threshold problem with Plaintiff's claim against C.O. Kinney and Nurse Berlinghoff is that Defendants have established that neither had any personal involvement in the claims alleged and are entitled to judgment as a matter of law.  *Parker v. State of New York*, No. 22-CV-3170(GRB)(AYS), 2022 WL 2441215, at *3 (E.D.N.Y. July 1, 2022) ("Where a Section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law.").  By not responding to the motion, Plaintiff has failed to identify any specific facts contesting Defendants' evidence or showing that there is a genuine issue for trial as to the involvement of either defendant in the alleged incident.

Moreover, even had C.O. Kinney or Nurse Berlinghoff been involved as alleged, no rational jury could find that Plaintiff suffered from a serious medical need and that the prison officials were deliberately indifferent to such need.

As to the serious medical need, a number of district courts in this circuit have found that, "[t]he residual effects of a chemical agent . . . do not constitute a serious medical need." *Alston v. Butkiewicus*, No. 3:09-cv-207(CSH), 2012 WL 6093887, at *16 (D. Conn. Dec. 7, 2012) (citing *Blond v. City of Schenectady*, No. 10-CV-0598, 2010 WL 4316810, at *5 (N.D.N.Y. Oct. 25, 2010) (denial of ability to rinse eyes for 30 to 60 minutes after being sprayed with chemical agent was not serious medical need); *Strassner v. O'Flynn*, No, 04-CV-6021CJS, 2006 WL 839411, at *8 (W.D.N.Y. Mar. 27, 2006) (citing cases and finding that exposure to temporary discomfort of pepper spray is not a serious medical need)); *see also Jones v. Wagner,* No. 3:20-CV-00475 (VAB), 2022 WL 1525134, at *10 (D. Conn. May 13, 2022) ("The residual effects of a chemical agent generally do not, without more, constitute a serious medical need."); *Williams v. City of New York*, No. 19CV3347LJLJLC, 2022 WL 130409, at *26 (S.D.N.Y. Jan. 14, 2022) ("Any temporary discomfort caused by pepper spray or mace does not constitute a 'sufficiently serious' injury within the meaning of deliberate indifference." (citation and quotation omitted)), *report and recommendation adopted*, No. 19-CV-3347 (LJL), 2022 WL 446041 (S.D.N.Y. Feb. 14, 2022); *but see Cruz-Droz v. Marquis*, No. 3:17-CV-1291 (MPS), 2018 WL 1368907, at *4 (D. Conn. Mar. 16, 2018) (finding serious medical need for purposes of frivolity review where plaintiff was not "permitted to shower to decontaminate himself after exposure to the chemical agent"); *Parsons v. City of New York*, No. 17-CV-2707 (MKB), 2017 WL 2656135, at *3 (E.D.N.Y. Jun 19, 2017) ("Injuries or pain resulting from being sprayed with mace sufficiently establish the existence of a serious medical need deserving of medical attention.").

Even if Plaintiff is presumed to have established that the delay in commencing the decontamination process and damage to his vision constituted a sufficiently serious medical need, he fails to satisfy the subjective component of the deliberate indifference test. Plaintiff and Moye, who began fighting at 5:02 p.m., were secured in the mess hall immediately after they stopped fighting. Defendants have provided evidence documenting the standard operating procedure of making sure that the facility was secure before moving the inmates to special housing, a process that takes 5-10 minutes. Plaintiff's allegations are consistent with that time frame. Defendants similarly provide evidence regarding the standard procedure of moving Plaintiff and Moye separately to avoid further confrontations and that Moye's escort occurred first, starting at 5:08 p.m. and ending at 5:10 p.m., with Plaintiff's escort beginning at 5:10 p.m. and completed at 5:16 p.m., at which time Plaintiff began the decontamination process in the special housing unit. This is not a case where Plaintiff was denied access to decontamination entirely; rather, he contests the adequacy of a delay of approximately 15 to 20 minutes between the use of the chemical agent and the decontamination process. Mere disagreement about what constitutes appropriate care does not rise to the level of deliberate indifference and on these facts, the delay experienced by Plaintiff does not rise to the level of a constitutional violation. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Shabazz v. Semple*, No. 3:17CV904(KAD), 2019 WL 1979959, at *6 (D. Conn. May 3, 2019) (dismissing claim that a failure to provide "a solution that might have been more effective [than a shower] in alleviating the burning sensation [from] mace in the

medical department constitutes negligence at most and does not meet the subjective prong of the Eighth Amendment standard"); *Flemming v. Kemp*, No. 09-CV-1185 TJM/DRH, 2012 WL 4094196, at *15 (N.D.N.Y. Aug. 30, 2012) (granting summary judgment on deliberate indifference claim where the treatment provided to Plaintiff after the deployment of chemical agents caused the effects to be "quickly alleviated with removal from the gassed area and decontamination"); *report and recommendation adopted*, No. 09-CV-1185, 2012 WL 4094009 (N.D.N.Y. Sept. 17, 2012).  Accordingly, even taking the facts in the light most favorable to Plaintiff, the Court cannot conclude that there is a genuine issue for trial as to the deliberate indifference of any defendant and summary judgment is warranted.  *See Jones*, 2022 WL 1525134, at *11 (granting summary judgment where evidence showed that although plaintiff complained of pain after deployment of the chemical agent, he was promptly given a decontamination shower and evaluated by medical staff and "has not provided any evidence to rebut this account, or otherwise substantiated that the medical care he received thereafter from Nurse Broderick, regardless of whether he had a serious medical need, was inadequate, much less deliberately indifferent"); *Jackson v. Jackson*, No. 16-CV-08516 (PMH), 2021 WL 981849, at *5 (S.D.N.Y. Mar. 16, 2021) ("Even while granting Plaintiff – who filed nothing in opposition to this motion . . . – every conceivable benefit of the doubt to which a *pro se* litigant is entitled, there is no genuine issue of material fact on the instant motion.").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 53) is granted.  The Clerk of Court is directed to terminate C.O. Kinney and Nurse Berlinghoff as defendants in this action.

SO ORDERED.


ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:          July 7, 2022
                Rochester, New York